# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
November 16, 2004 Session

## CHRISTOPHER LEE TUTTLE v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2000-D-2259     Steve Dozier, Judge**

---

**No. M2003-02984-CCA-R3-PC - Filed March 2, 2005**

---

The petitioner, Christopher Lee Tuttle, appeals as of right the judgment of the Davidson County Criminal Court dismissing his petition for post-conviction relief from his convictions for drug-related offenses and effective forty-year sentence. The petitioner contends (1) that the state breached his plea agreement which undermined the voluntariness of his guilty plea and (2) that the state engaged in prosecutorial misconduct by acting vindictively and violating Rule 8(a), Tenn. R. Crim. P., requiring mandatory joinder. We affirm the trial court's denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

Peter J. Strianse, Nashville, Tennessee, and Kimberly S. Hodde, Madison, Tennessee, for the appellant, Christopher Lee Tuttle.

Paul G. Summers, Attorney General and Reporter; Helena Walton Yarbrough, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and John C. Zimmerman, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The petitioner was indicted on December 14, 2000, for multiple drug offenses and, pursuant to an agreement, pled guilty on April 15, 2002, to conspiracy to sell more than 300 pounds of marijuana, possession of more than 300 pounds of marijuana with intent to sell, possession of more than 70 pounds of marijuana, and five counts of money laundering. In exchange, the petitioner received an effective sentence of forty years as a Range I, standard offender. On November 12, 2002, the Davidson County Grand Jury returned a second indictment against the petitioner for two counts of conspiracy to commit the offense of money laundering and three counts of money laundering. In his petition for post-conviction relief, the petitioner argued that the state breached the

plea agreement by contemplating new charges and continuing its investigations at the time of his guilty plea. He asserted that the state's actions rendered his guilty plea involuntary, unknowing, and unintelligent and that the state engaged in prosecutorial misconduct by acting with vindictiveness and in violation of Rule 8(a), Tenn. R. Crim. P. Following two evidentiary hearings, the trial court denied post-conviction relief.

At the first hearing, Metro Police Officer Philip Taylor testified that he had been assigned to the 20th Judicial District Drug Task Force in 1976 and that he began working as an investigator in December 2001 or January 2002. He said that he was involved in the investigation of the petitioner's case at its inception but that the case was turned over to another agency after the petitioner's arrest in August 2000. He said that in April 2002 he was asked to assist again with an investigation involving the petitioner. He said the police executed a search warrant on May 2, 2002, for the residence which the petitioner had shared with his wife and mother-in law before his incarceration. He said that he had conducted surveillance of the residence during the week before execution of the warrant and that he was not aware of any other investigations relating to the petitioner's activities being conducted at that time.

Officer Taylor said that his May 2002 investigation was focused on the proceeds generated by the marijuana trafficking charges filed in 2000 and that he believed thousands of dollars in proceeds remained hidden. He said that he was not involved in a search for the funds in April 2002 and that, as far as he knew, no one else had been assigned the task. He said he became involved again with the case at the end of April 2002 pursuant to a conversation he had with Assistant District Attorney General John Zimmerman. He said that they had discussed where the money the petitioner made while distributing marijuana could be hidden and that they noted Lisa Tuttle, the petitioner's wife, and Janet Simpson, the petitioner's mother-in-law, continued to make payments on the car and the house mortgage and generally maintain their lifestyle. He said they decided at that time to obtain a search warrant for the residence to discover the source of the funds. He admitted the officers involved with the case always suspected "there was more cash out there," but he said no one had approached him with the idea of searching for it until the end of April 2002. On cross-examination, he said that before the execution of the search warrant in May 2002, he was not aware of any evidence that the petitioner was engaged in money laundering activities. He said the search revealed evidence of unusual expenditures by Lisa Tuttle and Janet Simpson, $330,000 in cash, piles of clothing with the price tags still on them, and letters from the petitioner accusing Lisa of spending two million dollars since he became incarcerated.

The petitioner's trial attorney testified that he represented the petitioner before his arrest in August 2000 through his guilty plea on April 15, 2002. He said that initially the petitioner was not interested in the state's offer but that the petitioner became more interested in the latter part of March and April 2002. He said that concerns for family increased the petitioner's interest in accepting the state's terms but that he thought the offer was not a very good deal. He said Mr. Zimmerman sent him an e-mail transmission which outlined the plea offer and ultimately became the terms and conditions of the agreement. He said he conveyed the offer to the petitioner with a follow-up letter. He said that according to his understanding, the plea would be in full and complete satisfaction of

all charges that could be brought in connection with this investigation and that this understanding was indicated by the language in his follow-up letter which stated they wanted to "make our peace for forty years." He said no one had informed him that the state was continuing its investigation into money laundering activities and attempting to locate the proceeds at the time the plea negotiations were occurring. He said that if the state had evidence concerning additional money laundering offenses in April 2002, it was not communicated to him. He said that this information was necessary to make an informed decision concerning the plea and that if these circumstances were made known to him, the petitioner would not have accepted the agreement. He said that the petitioner believed the plea would "end his problems with the State of Tennessee," at least those that the state was aware of as of April 15, 2002, and that their intent was to "have a global settlement." He said the petitioner was never under the impression that if he accepted the agreement and forty-year sentence he could keep the money he made by selling marijuana.

At the second hearing, Metro Police Officer Mike Garbo testified that he worked as an investigator for the 20th Judicial District Drug Task Force in March and April 2002 and that he was asked to assist with follow-up work on the petitioner's case. He said that on March 25, 2002, he interviewed a doctor who had briefly employed the petitioner's mother-in-law and photographed some evidence but that he had no involvement with or any knowledge of investigations concerning the petitioner. On cross-examination, he said he did not believe that his interview of the doctor was related to the petitioner. Reading from his report, Officer Garbo said that the doctor had hired Janet Simpson as a babysitter in February 2000 and that in May 2000 she asked the doctor if he would hide approximately $30,000 for her. According to the doctor, she was trying to hide money from her husband, and he declined to help her.

Metro Police Department Officer Rigsby testified that he worked for the 20th Judicial District Drug Task Force and that he participated in the investigations which led to the indictment of the petitioner in 2002. He said that he was aware of the trial pending in 2002 and that he participated in investigations concerning the petitioner's marijuana suppliers. He said he had a conversation with the petitioner's attorney after the petitioner pled guilty and before the execution of the search warrant. He said that he asked him if the petitioner would be interested in a sentence reduction in exchange for information about his assets but that the petitioner was not interested. He said he was inquiring into the location of illegally obtained assets and not conducting an investigation of money laundering activities at that time. He said that after the petitioner was arrested in August 2000, he conducted several interviews of the petitioner's family but that the primary focus of his investigation had shifted to discovering the identity of the petitioner's suppliers. He said he learned of Officer Taylor's investigation into the petitioner's money laundering activities after they seized the $330,000 in cash and the letters concerning the petitioner's wife's expenditures. This concluded the proof.

The trial court denied the petitioner post-conviction relief. With regard to the petitioner's contention that the second indictment violated the rule concerning mandatory joinder and was a product of vindictive prosecution, the trial court found no proof that the state was contemplating the additional charges before the petitioner pled guilty to the offenses in the first indictment. The trial court found that the state had suspicions but no evidence sufficient for grand jury action. It noted

the petitioner's attorney testified that he was under the impression the offer made by Mr. Zimmerman was a "global" offer of settlement and that the plea would end the petitioner's exposure to further criminal liability. It noted, however, that the e-mail transmission between Mr. Ray and Mr. Zimmerman did not mention further investigations or a bar to future prosecution. The trial court found that the plea offer was a "global" settlement based on the information known to the state at that time and that, subsequent to the offer and plea, the state acquired evidence of additional crimes. Under the circumstances, it found the presumption of vindictiveness was not warranted in the petitioner's case and was not convinced a realistic likelihood of prosecutorial retaliation existed. The trial court credited the testimony of the officers who failed to indicate that ongoing investigations existed concerning money laundering of the proceeds from drug sales by the petitioner. It found the investigative reports and related testimony upon which the petitioner relied were suggestive at best and did not conclusively establish that the state was aware of any assets other than those previously seized. The court concluded that the state was not guilty of prosecutorial vindictiveness or "holding back" and that the second indictment did not have to be joined pursuant to Rule 8, Tenn. R. Crim. P.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103. The petitioner's allegations must be proven by clear and convincing evidence. See T.C.A. § 40-30-110(f). Once the trial court has ruled upon a petition, its findings of fact are conclusive on appeal unless the evidence in the record preponderates against them. Wallace v. State, 121 S.W.3d 652, 656 (Tenn. 2003). This court may not reweigh or reevaluate the evidence or substitute its inferences for those drawn by the post-conviction court. State v. Nichols, 90 S.W.3d 576, 586 (Tenn. 2002). Questions concerning the credibility of witnesses and the weight to be given their testimony are for resolution by the post-conviction court. Id. (citing Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997)).

## I. BREACH OF PLEA AGREEMENT AND VOLUNTARINESS OF PLEA

The petitioner contends that by seeking a second indictment based upon violations which were investigated and known to the state during plea negotiations, the state breached the plea agreement. The state responds that it did not possess evidence of additional crimes committed by the petitioner at the time of his guilty plea and that the plea agreement did not bar future investigations or prosecutions.

In Boykin v. Alabama , 395 U.S. 238, 89 S. Ct. 1709 (1969), the Supreme Court stated:

> A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment. Admissibility of a confession must be based on a "reliable determination on the voluntariness issue which satisfies the constitutional rights of the defendant."

Id. 395 U.S. at 242, 89 S. Ct. at 1711-1712 (quoting Jackson v. Denno, 378 U.S. 368, 387, 84 S.Ct. 1774, 1786 (1964)). A defendant pleading guilty waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. A guilty plea which is not voluntary and knowing has been obtained in violation of due process and is void. Id. n.5. "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262, 92 S.Ct. 495, 499 (1971).

The petitioner's attorney testified that the e-mail transmission sent to him by Mr. Zimmerman outlined the plea offer which ultimately became the terms and conditions of the agreement and that he conveyed the offer to the petitioner. Although he testified that the plea would be in full and complete satisfaction of all charges that could be brought in connection with the state's investigation, the e-mail included in the record does not contain language indicating this was contemplated. Rather, it gives information regarding the counts, sentences, fines, fees and forfeiture. The petitioner's attorney said that he sent the petitioner a follow-up letter. It stated the following:

> You had consistently rejected this forty (40) year offer, which I full well understand, up and until this point, but when faced with placing Lisa and Janet in more jeopardy by their having to testify at your trial you instructed me to seek out Mr. Zimmerman and try to make our peace for forty years.

The letter also fails to contain language specifically barring future investigation or prosecution. Instead, it suggests that the petitioner's motivation to plead guilty was based on his desire to avoid unpleasant consequences for his family. The petitioner's attorney testified that the language "make our peace for forty years" indicated the petitioner's intention that the plea would be in full and complete satisfaction of all charges that could be brought. We do not believe that this language is sufficient to indicate the petitioner's intent.

The plea agreement was reduced to writing using a standard form to set forth its terms and scope. The portions of the agreement left blank to allow for modifications and specifications were filled in and are devoid of language to indicate that the parties contemplated any bar to future investigations or prosecutions. The handwritten specifications relate only to sentence lengths and list those counts of the indictment to which the petitioner pled guilty. All blank lines were filled in, with the exception of the line requiring a signature from the Attorney for State.

Post-conviction relief requires the petitioner to establish that his or her conviction is void or voidable because of an abridgement of a constitutional right and prove his allegations by clear and convincing evidence. See T.C.A. §§ 40-30-103, -110(f). The petitioner claims he believed that by pleading guilty, "he was fully satisfying Davidson County's prosecutorial interest in him." He claims that the state deceived him and that the deception undermined his ability to enter a knowing, voluntary and intelligent plea. When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea

represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 164 (1970). In this case, the petitioner was required to prove by clear and convincing evidence that but for the plea being in full and complete satisfaction of all charges that could be brought in connection with the state's investigation, he would not have pled guilty. Because he did not testify, we have only the testimony of the petitioner's attorney and the written agreement. The petitioner's argument that he would not have pled guilty except for the opportunity to limit future investigations and prosecutions was weakened by his choice not to testify and does not necessarily demonstrate that his decision was not the product of a free and rational choice. He was represented by competent and experienced counsel. His attorney testified that he did not think the state's offer was a good deal and that he counseled the petitioner against accepting the offer.

In any event, the evidence presented by the petitioner at the hearing fails to prove that the offenses in the second indictment were known to the appropriate prosecuting official at the time the petitioner pled guilty. The testimony of Officers Taylor and Garbo indicated that they had no knowledge of any investigations into the petitioner's criminal activities at the time of his guilty plea. Officer Rigsby testified that he learned of Officer Taylor's investigation into the petitioner's money laundering activities after they seized the $330,000 in cash and the letters on May 2, 2002. The second indictment alleged twenty crimes, five counts involving the petitioner. Count one alleged that the petitioner committed a conspiracy offense during January 2001 to May 2, 2002: count two alleged a conspiracy offense was committed during May 3, 2002 to September 30, 2002; count three alleged a money laundering offense committed on December 5, 2001; count eight alleged a money laundering offense committed on May 1, 2002; and count seventeen alleged a money laundering offense committed in September 2002. Counts one and three alleged offenses committed during periods of time which occurred before the petitioner pled guilty. The other three offenses were committed afterward.

We conclude that the agreement did not contemplate a bar to future investigations or prosecutions and, therefore, that the state did not breach the agreement by presenting the second indictment to the grand jury. We also conclude that the petitioner failed to prove by clear and convincing evidence the guilty plea did not represent a voluntary and intelligent choice among the alternative courses of action open to him.

## II. PROSECUTORIAL MISCONDUCT

The petitioner contends that in seeking a second indictment based upon violations which were investigated and known to the state during plea negotiations, the state engaged in prosecutorial misconduct by acting with vindictiveness and in violation of Rule 8(a), Tenn. R. Crim. P., requiring mandatory joinder of offenses. The state responds that the petitioner failed to present evidence the state had proof of the offenses in the second indictment before his plea and, thus, there was no proof that it acted out of vindictiveness and no requirement the indictment be joined.

-6-

As we stated, post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103. Prosecutorial misconduct is not necessarily a justiciable issue in a post-conviction proceeding unless it denies a defendant a constitutional right to due process. However, we have concluded that the evidence fails to prove that the offenses in the second indictment were known to the appropriate prosecuting official at the time the first indictment was returned or the guilty plea was entered. Therefore, we conclude that the state did not act with vindictiveness and that no due process right of the petitioner's was violated.

The issue relating to the state's violation of Rule 8(a), Tenn. R. Crim. P., requiring mandatory joinder, is likewise without merit. A violation of this rule would not establish that the petitioner's convictions were either void or voidable because of an abridgement of a constitutional right. The petitioner's remedy would be to dismiss the second indictment, not vacate his convictions.

Based on the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE